UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

OTIS CROSBY, JR.,

    Plaintiff,

v.                                        Case No. 3:22-cv-669-MMH-MCR

CENTURION OF FLORIDA, et al.,

    Defendants.

## **ORDER**

Plaintiff Otis Crosby, Jr., an inmate of the Florida penal system, initiated this action on June 15, 2022, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1). Crosby proceeds on an Amended Complaint (AC; Doc. 8). Crosby names as Defendants (1) Centurion of Florida; (2) Reception and Medical Center (RMC) Sergeant Hollingsworth; (3) RMC Sergeant John Doe 1; (4) RMC Sergeant John Doe 2; (5) Dr. R. Bassa, RMC Medical Director; (6) Michelle Schouest, Florida Department of Corrections (FDOC) IISC; and (7) the Office of Utilization Management (UM Office).

In his AC,[1] Crosby asserts he received inadequate medical care for a stab wound to his left hand that he sustained at Jackson Correctional

---

[1] The AC supersedes the filing of the initial complaint and becomes the operative pleading. TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co., 959 F.3d 1318, 1327 (11th Cir. 2020).

Institution on September 14, 2020. He contends that, after prison officials transferred him to RMC on October 23, 2020, he missed medical appointments for his hand because of untimely transport by RMC officials. According to Crosby, he received only a four-week course of physical therapy when his doctors recommended an eight-week course. He also alleges prison officials did not take him to a postoperative appointment, initially scheduled for January 2022, until May 2, 2022.

Crosby asserts that Defendants Centurion, Schouest, Dr. Bassa, and the UM Office violated his rights under the Eighth Amendment when they failed to treat him or to provide adequate medical remedies. He also raises breach of duty and breach of contract claims against Defendants Centurion, Sergeant Hollingsworth, Sergeant John Doe 1, and Sergeant John Doe 2.

The Prison Litigation Reform Act (PLRA) requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief.[2] See 28 U.S.C. §§ 1915(e)(2)(B); 1915A. "A claim is frivolous if it is without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)

---

[2] Crosby proceeds as a pauper. See Doc. 4.

(citing Battle v. Cent. State Hosp., 898 F.2d 126, 129 (11th Cir. 1990)). A complaint filed in forma pauperis which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Section 1915(e)(2)(B)(i) dismissals should only be ordered when the legal theories are "indisputably meritless," id. at 327, or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). "Frivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" Bilal, 251 F.3d at 1349 (quoting Neitzke, 490 U.S. at 328). Additionally, a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success. Id. As to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, and therefore courts apply the same standard in both contexts.[3] Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

---

[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

3

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, under Eleventh Circuit precedent, to prevail in a § 1983 action, a plaintiff must show "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted); Porter v. White, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff still must meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the

4

. . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While not required to include detailed factual allegations, a complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. In the absence of well-pled facts suggesting a federal constitutional

5

deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

## I. Eighth Amendment Deliberate Indifference

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). The Eleventh Circuit has explained:

> "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). To meet the first prong, the plaintiff must demonstrate an "objectively serious medical need"—i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," and, in either instance, "one that, if left unattended, poses a substantial risk of serious harm." Id. (alteration adopted) (quotations omitted). To satisfy the second, subjective prong, the plaintiff must prove that the prison officials "acted with

6

> deliberate indifference to [his serious medical] need." Harper v. Lawrence Cty., 592 F.3d 1227, 1234 (11th Cir. 2010) (quotation omitted). "To establish deliberate indifference," a plaintiff must demonstrate that the prison officials "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." Id. (quotation omitted).[4] An inmate-plaintiff bears the burden to establish both prongs. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) (footnote omitted; emphasis added). For medical treatment to rise to the level of a constitutional violation, the care must be "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Id. at 1271 (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating "[g]rossly incompetent or inadequate care can constitute deliberate indifference . . . , as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem).

---

[4] The Eleventh Circuit has recognized "a tension within [its] precedent regarding the minimum standard for culpability under the deliberate-indifference standard." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 n.2 (11th Cir. 2020). The court stated that the "competing articulations –'gross' vs. 'mere' negligence"– may be "a distinction without a difference" because "no matter how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the Supreme Court's standard." Id.; Patel v. Lanier Cnty. Ga., 969 F.3d 1173, 1188 n.10 (11th Cir. 2020).

However, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham, 654 F.3d at 1176 (quotation marks and citation omitted). Moreover, the Eleventh Circuit has noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth

8

Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted). In sum, the Eleventh Circuit has stated:

> A prisoner bringing a deliberate-indifference claim has a steep hill to climb. We have held, for instance, that the Constitution doesn't require that the medical care provided to prisoners be "perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quotation omitted).[5] Rather, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. at 1505 (quotation omitted). We have also emphasized—as have our sister circuits—that "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." Id.; accord, e.g., Lamb v. Norwood, 899 F.3d 1159, 1162 (10th Cir. 2018) ("We have consistently held that prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."); Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (en banc) ("[The Eighth Amendment] does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing.").

Keohane, 952 F.3d at 1266.

A municipality or other governmental entity may be held liable under § 1983 where that municipality's policies or customs cause a constitutional

---

[5] Harris v. Thigpen, 941 F.2d 1495 (11th Cir. 1991).

9

violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Harris, 489 U.S. at 385. Where a private entity contracts with a state or municipality to provide medical services to inmates, it becomes the functional equivalent of the state under § 1983. See Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011); Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). The plaintiff must prove that the agents of the private medical provider violated his constitutional rights, and its policy or custom was the "moving force behind" the deprivation. See Craig, 643 F.3d at 1310.

### A. Counts Four and Five

As Counts Four and Five, Crosby alleges that Schouest and Dr. Bassa acted with deliberate indifference to his serious medical needs when they denied grievances about the delay and denial of medical treatment for his hand. To the extent Crosby alleges that Schouest and Dr. Bassa mishandled or improperly denied his grievances, such a claim alone does not support a cause of action pursuant to § 1983. See Baker v. Rexroad, 159 F. App'x 61, 62 (11th Cir. 2005)[6] (per curiam) ("Because the failure of [the defendants] to take

---

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a

corrective action upon the filing of [the plaintiff]'s administrative appeal at the institutional level did not amount to a violation of due process, the district court properly determined that [the plaintiff] failed to state a claim under § 1983. . . ."); Larson v. Meek, 240 F. App'x 777, 780 (10th Cir. 2007) (finding that a defendant's "denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations"); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (finding that prison officials who were not involved in an inmate's termination from his commissary job, and whose only roles involved the denial of administrative grievances or the failure to act, were not liable under § 1983 on a theory that the failure to act constituted an acquiescence in the unconstitutional conduct). While the denial of a complaint concerning medical care can sometimes amount to deliberate indifference, see Goebert, 510 F. 3d at 1312,[7] Crosby fails to state such a claim

---

particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[7] In Goebert, a pregnant pretrial detainee submitted a medical complaint form, wherein she requested to see an obstetrician or a doctor outside of the county jail. 510 F.3d at 1318. The plaintiff indicated in her complaint that she had leaked amniotic fluid for approximately nine days, she had not felt any movements from her baby, and she had a history of miscarriages. Id. The defendant, a facility commander, responded that medical could arrange an appointment at her expense, despite plaintiff noting in her complaint that medical staff had "ignored her daily requests for aid and had already failed to set up an appointment for her with an outside obstetrician." Id. at 1328.

in the AC. Crosby maintains that he grieved the delay and denial of "medical treatment." AC at 12-13. However, he fails to allege the nature of the requests or complaints that he raised in his grievances, specifically whether he grieved the denial of an eight-week course of physical therapy, the delay in his postoperative appointment, or requested additional treatment for his injury. Further, Crosby only generally alleges that Schouest and Dr. Bassa denied grievances and "fabricated statements." Id. at 13. He does not provide the substance of or the reasons for the denials of his grievances. Such allegations amount to nothing "more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." Ashcroft, 556 U.S. at 678. Without more, Crosby fails to sufficiently plead deliberate indifference to medical care based on Schouest and Dr. Bassa's denial of his grievances. Therefore, Counts Four and Five are due to be dismissed pursuant to the Court's screening obligation.

### B. Counts Two, Six, Seven, and Eight

As Count Two, Crosby asserts that Centurion[8] implemented a policy that that allowed "non-doctors aprn[]s and doctors who are not trained specialist[s] to override the recommendations of a trained specialist." AC at 10. He contends

---

[8] Crosby identifies Centurion as a "contracted medical provider." AC at 3.

that, as a result of Centurion's policy, prison officials sent him to doctors unable to treat his injury on January 7, 2021, and February 4, 2021.

Here, Crosby has alleged no facts showing that Centurion violated his constitutional rights or caused a violation of his constitutional rights. His claim is conclusory in nature and lacks specific facts that would allow the Court to draw a reasonable inference that Centurion's policy was deliberately indifferent to his serious medical needs. Because Crosby has not presented sufficient allegations to support a claim for an Eighth Amendment violation, Count Two is due to be dismissed.

In Counts Six through Eight, Crosby avers that the UM Office implemented policies that resulted in the delay or denial of medical treatment for his injury. He contends that a physician recommended Crosby undergo an eight-week course of physical therapy after surgery on his hand. However, due to the UM Office's cost-saving policy, it only approved a four-week course of physical therapy. He also asserts that the UM Office's "approval process" delayed his medical appointment. According to Crosby, he required a four-week postoperative appointment so doctors could place his hand in a hard cast. However, Crosby never received a hard cast because the UM Office did not approve his appointment in a timely manner.

13

The Court finds Crosby has failed to state a plausible claim for relief. He does not demonstrate that the UM Office's cost-saving policy and approval process violated his Eighth Amendment right or caused such a violation. Moreover, he offers no allegations that the missed postoperative appointment or the denial of additional physical therapy presented a substantial risk of serious harm. Accordingly, Grounds Two, Six, Seven, and Eight are due to be dismissed.

## II. Counts One and Three

As Count One, Crosby asserts a breach of contract claim against Centurion. He avers that Centurion failed to fulfill its contract to provide medical services to Crosby. Similarly, in Count Three, he asserts RMC Sergeants Hollingsworth, John Doe 1, and John Doe 2 breached their duty to Crosby and exercised deliberate indifference to his serious medical needs when they did not timely transport him to a medical appointment on January 7, 2020.

To the extent Crosby raises pendant state law claims in Counts One and Three, the Court declines to exercise supplemental jurisdiction over them.[9] See

---

[9] If Crosby intends to raise a deliberate indifference claim as to RMC Sergeants Hollingsworth, John Doe 1, and John Doe 2, he fails to state a claim for relief. Crosby does not allege how the Defendants alleged conduct amounted to more than gross negligence or exacerbated his injuries.

14

Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004) (noting that districts courts are encouraged "to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). In light of the foregoing, this case is due to be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. This case is hereby **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B).

2. The Clerk shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of September, 2022.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

Jax-9 9/15
C:   Otis Crosby, Jr. #C09771

15